**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JUAN DIEGO HERNANDEZ, | : | **HONORABLE ROBERT B. KUGLER** |
|  | : |  |
| Petitioner, | : | Civil Action No. 05-4016 (RBK) |
|  | : |  |
| v. | : | **OPINION** |
|  | : |  |
| HARLEY LAPPIN, | : |  |
|  | : |  |
| Respondent. | : |  |

**APPEARANCES:**

    JUAN DIEGO HERNANDEZ,#35633-179
    F.C.I. Three Rivers
    P.O. Box 4200
    Three Rivers, Texas 78071
    Petitioner <u>Pro</u> <u>Se</u>

    LOUIS J. BIZZARRI, Assistant United States Attorney
    CHRISTOPHER J. CHRISTIE, United States Attorney
    401 Market Street, 4th Floor
    Camden, New Jersey  08101
    Attorneys for Respondent

**KUGLER**, District Judge

    Petitioner Juan Diego Hernandez filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging the Bureau of Prisons' ("BOP") refusal to place him in a shock incarceration program.  The BOP filed an Answer and a motion to transfer the Petition to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1406.  For the reasons expressed below and pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court will dismiss the Petition with prejudice and deny the motion as moot.

## I.   BACKGROUND

The relevant facts are not in dispute.  Petitioner, who was incarcerated at F.C.I. Fairton Camp in New Jersey when he filed the Petition, is now incarcerated at F.C.I. Three Rivers in Texas.  Petitioner is serving a federal sentence of 26 months imposed on November 1, 2004, by the United States District Court for the Southern District of Texas for possession with intent to distribute in excess of 50 kilograms of marihuana, contrary to 28 U.S.C. §§ 841(a)(1), 841(b)(1)(C).  See United States v. Hernandez, Crim. 04-0719-1 judgment (S.D. Tex. Nov. 1, 2004).  In accordance with the recommendation of Judge George P. Kazen in the judgment, on November 22, 2004, the BOP designated Petitioner to the Intensive Confinement Center ("ICC") or shock incarceration program, see 18 U.S.C. § 4046, and transferred him to Lewisburg on January 3, 2005, to participate in the program.

On January 5, 2005, Harley Lappin, the Director of the BOP, announced that the BOP was discontinuing the shock incarceration program due to budgetary pressures, effective immediately.  Consequently, on January 7, 2005, the BOP denied Petitioner's placement in the shock incarceration program.  On January 12, 2005, the BOP transferred Petitioner to F.C.I. Fairton Camp, and on December 20, 2005, the BOP transferred him to F.C.I. Three Rivers.  The BOP has approved Petitioner's transfer to a

community corrections center in Texas effective August 14, 2006, and projects his release date as October 19, 2006.

Petitioner contends that, as a result of the failure to place him into the shock incarceration program, he was not eligible for a six-month sentence reduction. He claims that termination of the program violates 18 U.S.C. § 4046 because the sentencing court recommended participation and the statute does not give the BOP discretion to terminate the program; violates the Administrative Procedure Act because the termination was effected without notice and comment; and violates the Ex Post Facto Clause. He seeks an order directing the BOP to place him in the shock incarceration program, or to alternatively reduce his sentence by six months.

The BOP filed an Answer and a motion to transfer the Petition pursuant to 28 U.S.C. § 1406, accompanied by the declaration of Michael D. Tafelski, Deputy Regional Counsel for the Northeast Regional Office of the BOP. According to Tafelski, Petitioner did not file an administrative remedy in regard to the shock incarceration program. The BOP argues that the Petition should be dismissed for failure to exhaust administrative remedies and because the BOP had the discretion to terminate the program. Alternatively, the BOP contends that the habeas Petition should be transferred to the Southern District of Texas.

**II.  DISCUSSION**

A.  Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody" and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989).  The federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed."  Lee v. Stickman, 357 F.3d 338, 342 (3d Cir. 2004) (quoting Maleng, 490 U.S. at 490-91).

This Court has subject matter jurisdiction under § 2241 to consider the instant Petition because Petitioner challenges the execution of his sentence and he was incarcerated in New Jersey at the time he filed the Petition.[1]  See Spencer v. Kemna, 523 U.S. 1 (1998); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242-44 (3d Cir. 2005).

---

[1] At the time Petitioner filed the Petition, he was confined at the Federal Correctional Institution in Fairton, New Jersey. He was thereafter transferred to F.C.I. Three Rivers in Texas.

B.  Applicable Statutes and Regulations

In 1990, Congress authorized the BOP to place a federal prisoner who is sentenced to a term of incarceration of more than 12, but not more than 30, months, in the shock incarceration or intensive confinement center program.  See 18 U.S.C. § 4046. Section 4046, entitled "Shock incarceration program," provides:

> (a) The Bureau of Prisons may place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30, months, if such person consents to that placement.
>
> (b) For such initial portion of the term of imprisonment as the Bureau of Prisons may determine, not to exceed 6 months, an inmate in the shock incarceration program shall be required to--
>
> (1) adhere to a highly regimented schedule that provides the strict discipline, physical training, hard labor, drill, and ceremony characteristic of military basic training; and
>
> (2) participate in appropriate job training and educational programs (including literacy programs) and drug, alcohol, and other counseling programs.
>
> (c) An inmate who in the judgment of the Director of the Bureau of Prisons has successfully completed the required period of shock incarceration shall remain in the custody of the Bureau for such period (not to exceed the remainder of the prison term otherwise required by law to be served by that inmate), and under such conditions, as the Bureau deems appropriate.

18 U.S.C. § 4046.

Effective November 1, 1991, the United States Sentencing Guidelines were amended to provide:  "The court, pursuant to 18 U.S.C. § 3582(a) and 3621(b)(4), may recommend that a defendant who meets the criteria set forth in 18 U.S.C. § 4046 participate

5

in a shock incarceration program." U.S. Sentencing Guidelines Manual § 5F1.7 (Policy Statement).

The BOP also adopted regulations implementing the shock incarceration program. See 28 C.F.R. §§ 524.30 - 524.33. The regulations provide that the program "is a specialized program combining features of a military boot camp with the traditional correctional values of the Bureau of Prisons, followed by extended participation in community-based programs." 28 C.F.R. § 524.30. The regulations specify that the placement of eligible inmates in the program "is to be made by Bureau staff in accordance with sound correctional judgment and the availability of Bureau resources." See 28 C.F.R. § 524.31(b). In addition, the regulations authorize the BOP to reduce the sentence of an inmate who is serving a sentence between 12 and 30 months based on successful completion of the program. See 28 C.F.R. § 524.32(d)(2).

> An inmate eligible for participation in the program under § 524.31(a)(1)(i) who successfully completes the institution-based component, who maintains successful participation in a community-based program, and has a period of supervised release to follow is eligible for up to a six month reduction in sentence.

28 C.F.R. § 524.32(d)(2).

C. Exhaustion

The BOP maintains that the Petition is subject to dismissal because Petitioner failed to exhaust the Administrative Remedy

6

Program available to federal prisoners.[2]  Exhaustion would be futile, however, given that Petitioner is not challenging the application of the program to him, but the validity of the BOP's discontinuance of the program.  Under these circumstances, the purposes of exhaustion would not be served by requiring Petitioner to exhaust his administrative remedies.  See Woodall, 432 F.3d at 239 n.2 (affirming determination of this Court that, where Petitioner was not challenging the application of the community corrections program regulations, but their validity, exhaustion is not required because the purposes of exhaustion would not be served).  Dismissal of the Petition for failure to exhaust administrative remedies is not appropriate.

---

[2] The Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement," except tort claims, inmate accident compensation claims, and Freedom of Information or Privacy Act requests.  28 C.F.R. §§ 542.10, 542.12(b).  An inmate must initially attempt to informally resolve the issue with staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counselor)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. 542.14.   The Warden is required to respond within 20 calendar days, but the inmate "may consider the absence of a response" within 20 days or 40 days, if the inmate has been informed in writing of the need for an extension, to be a denial.  Id.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response.  28 C.F.R. § 542.15(a).  The inmate may appeal to the General Counsel on a BP-11 within 30 days of the date the Regional Director signed the response.  Id.  Appeal to the General Counsel is the final administrative appeal. Id.

D.  Statutory Violation

Petitioner argues that the BOP exceeded its statutory authority in terminating the shock incarceration program.  The statute provides that the BOP "may place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30, months, if such person consents to that placement."  18 U.S.C. § 4046(a).

Use of the word "may" authorizes the BOP to place prisoners in a shock incarceration program, but does not require the BOP to do so.  See Jama v. Immigration & Customs Enforcement, 125 S. Ct. 694, 703 (2005) ("The word 'may' customarily connotes discretion"); Lopez v. Davis, 531 U.S. 230, 241 (2001) (use of the word "may" bestowed on BOP the "authority, but not the duty" to act in accordance with the statute).  Therefore, this Court finds that the BOP did not exceed its statutory authority by terminating the program.  See Palomino v. Fed. Bureau of Prisons, 408 F. Supp. 2d 282, 290 (S.D. Tex. 2005) ("By using the word 'may' instead of 'shall,' 18 U.S.C. § 4046(a) gives the BOP discretion to operate its boot camp program - including the discretion whether to operate one at all"); see also Roman v. LaManna, 2006 WL 2370319 *5 (D.S.C. Aug. 15, 2006); Serrato v. Clark, 2005 WL 3481442 *7 (N.D. Cal. Dec. 19, 2005); United States v. McLean, 2005 WL 2371990 *3 (D. Oregon Sept. 27, 2005).

E. Administrative Procedure Act

Petitioner argues that the BOP's decision to terminate the program violates the notice-and-comment requirements of the Administrative Procedure Act. The APA provides generally that an agency must publish notice of a proposed rulemaking in the Federal Register and afford interested persons an opportunity to comment. See 5 U.S.C. § 553. However, the notice-and-comment requirements do not apply to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A). A general statement of policy is a statement "issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power." Lincoln v. Vigil, 508 U.S. 182, 197 (1993). As the Supreme Court ruled in Lincoln, "[w]hatever else may be considered a 'general statemen[t] of policy,' the term surely includes an announcement like the one before us, that an agency will discontinue a discretionary allocation of unrestricted funds from a lump-sum appropriation." Id.

The BOP's decision to terminate the shock incarceration program is a general statement of policy that is exempt from the notice-and-comment requirements of the APA. See Roman v. LaManna, 2006 WL 2370319 *6 (D.S.C. Aug. 15, 2006); Palomino v. Fed. Bureau of Prisons, 408 F. Supp. 2d 282, 292 (S.D. Tex. 2005); Mares v. Fed. Bureau of Prisons, 401 F. Supp. 2d 775, 777-

78 (S.D. Tex. 2005); <u>Serrato v. Clark</u>, 2005 WL 3481442 *7 (N.D. Cal. Dec. 19, 2005); <u>United States v. McLean</u>, 2005 WL 2371990 *4 (D. Oregon Sept. 27, 2005); <u>but see</u> <u>Castellini v. Lappin</u>, 365 F. Supp. 2d 197, 203 (D. Mass. 2005) (granting preliminary injunctive relief and finding that termination of the boot camp program may violate notice-and-comment requirements of APA). Thus, Petitioner is not entitled to relief on his APA claim.

F.  <u>Ex Post Facto</u>

Petitioner argues that termination of the shock incarceration program violates the *Ex Post Facto* Clause. The *Ex Post Facto* Clause forbids any law to impose "a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." <u>Weaver v. Graham</u>, 450 U.S. 24, 28 (1981). The central function of the *Ex Post Facto* Clause is "to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." <u>Garner v. Jones</u>, 529 U.S. 244, 249 (2000). Such laws "implicate the central concerns of the *Ex Post Facto* Clause: 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.'" <u>Lynce v. Mathis</u>, 519 U.S. 433, 441 (1997) (quoting <u>Weaver</u>, 450 U.S. at 30). To fall within the *ex post facto* prohibition, a law must be "retrospective – that is, it must apply to events occurring before its enactment – and it

10

must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce, 519 U.S. at 441 (citations and internal quotation marks omitted).

"Not every retroactive procedural change creating a risk of affecting an inmate's term or conditions of confinement is prohibited." Garner, 529 U.S. at 250. "[T]he focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' nor . . . on whether an amendment affects a prisoner's 'opportunity to take advantage of provisions for early release,' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." California Dep't of Corr. v. Morales, 514 U.S. 499, 506 n.3 (1995) (citation omitted).

Termination of the shock incarceration program affects only Petitioner's opportunity to participate in a discretionary program, which may lead to early release. This Court concludes that cancellation of the shock incarceration program does not violate the *Ex Post Facto* Clause. See Palomino v. Fed. Bureau of Prisons, 408 F. Supp. 2d at 293 ("The categorical decision to terminate the boot camp program merely affects the opportunity to participate in a discretionary program, the successful completion of which may allow for an early release. The decision did not

increase the sentence imposed."); see also Deanda v. Fed. Bureau of Prisons, 2006 WL 696625 *6 (S.D. Tex. March 14, 2006); Roman v. LaManna, 2006 WL 2370319 *7-8; Mares v. Fed. Bureau of Prisons, 401 F. Supp. 2d at 780; Serrato v. Clark, 2005 WL 3481442 *13-15; but see Castellini v. Lappin, 365 F. Supp. 2d 197, 205 (D. Mass. 2005) ("However, the BOP's discretion over allocation of resources, and over plaintiff's designation to the boot camp program, does not excuse the ex post facto termination of the program following plaintiff's sentencing, and boot camp recommendation").  The Court will dismiss the Petition because "none of the grounds alleged in the petition would entitle [petitioner] to relief."  United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000).

### III.   CONCLUSION

The Court will dismiss the Petition because Petitioner is not entitled to habeas relief and deny the motion to transfer.

                                    S/Robert B. Kugler
                                    **ROBERT B. KUGLER**
                                    United States District Judge

DATED: September 7 , 2006